the circumstances brought out by the testimony by commissions from the former home of the insured in Ireland, is such as to establish the fact that the membership in the order of the defendant was gained by a fraudulent misrepresentation of a material fact; that the applicant was, in fact, more than 60 years of age at the time of entering the order. This being true, he never had any real membership, and his beneficiary cannot recover on the policy issued.

The judgment appealed from should be affirmed, with costs. All concur.

## LLOYD v. THOMSON et al.

(Supreme Court, Special Term, Herkimer County. September 11, 1899.)

1. DAM—INJURY BY FLOWAGE—INJUNCTION.
   An owner of land bordering on a lake is entitled to an injunction against the flooding of his land, to its irreparable injury, by the erection of a dam across the outlet of the lake by other riparian owners for their own benefit.

2. STATUTE—CONSTRUCTION—LEGALITY OF ASSESSMENT.
   In Laws 1853, c. 347, providing for the construction of certain roads, and appointing commissioners with power to make assessments therefor, on lands described in the act, the fact that township 41, Totten and Crossfield's purchase, is therein discribed as being in the county of Hamilton, whereas a small part of it lies in Herkimer county, did not exempt such portion from taxation for the improvement, or affect the jurisdiction of the commissioners to make the assessments thereon.

3. SAME—CURATIVE ACT—CLERICAL ERROR.
   Laws 1865, c. 434, § 2, purporting to legalize the assessment made by said commissioners for the year 1854, which is recited as having been made and signed by one of such commissioners only, was intended to apply to the assessment of 1864, and should be so construed, the assessment for that year being the only one not signed by both commissioners.

Action by Aaron Lloyd against Edward Thomson, Jr., and others, to enjoin the flooding of plaintiff's land by the erection of a dam across the outlet of Big Moose Lake. Decree for plaintiff.

The following is the report of the referee:

To the Supreme Court: In pursuance of an order made in the above-entitled, action, by which it was referred to me to hear and determine the same, I do respectfully report that I have been attended by the parties and their counsel, and that, after hearing their respective allegations and proofs, and duly considering the same, I find as follows:

### Matters of Fact.

(1) That the defendants Lemon Thomson, Edward Thomson, Jr., and John A. Dix were, at the time of the commencement of this action, partners doing business under and by the firm name and style of the "Moose River Lumber Company."

(2) That the defendant the Nehasane Park Association was, at the time of the commencement of this action, a domestic corporation, duly organized under and in pursuance of the laws of the state of New York.

(3) That it appeared upon the trial that Lemon Thomson, one of the partners of said firm, had died, and, by consent of counsel in open court, the pleadings were ordered amended in that regard, and, being deemed so amended, the trial proceeded against the other two partners, as survivors, and the defendant corporation.

(4) That, at the time of the commencement of this action, the defendants Lemon Thomson, Edward Thomson, Jr., and John A. Dix, under the name of the "Moose River Lumber Company," with the consent and permit of defendant the Nehasane Park Association, were engaged in constructing a dam at the outlet of Big Moose Lake, for the purpose of checking the outflow of

its waters and raising them in the lake, for their private convenience in floating and driving logs.

(5) That the actual and threatened interference with the outflow of the waters of said lake, by the use of said dam, will cause irreparable loss and injury to the land described in the ninth finding of fact, not computable in dollars and cents, by the destruction of timber thereon, by rendering the shores unfit for camping purposes and summer residence, and by destroying the food and feeding places for game; thus permanently injuring its value.

(6) That the said land, thus exposed to injury by the acts and threatened acts of the defendants, belongs to, and is owned by, the plaintiff, Aaron Lloyd.

(7) That title to said land came to plaintiff by deed from Baker Woodruff and wife, bearing date December 25, 1883, and recorded in Herkimer county clerk's office, April 11, 1884, and nothing has occurred to impair or invalidate plaintiff's said title.

(8) That Baker Woodruff acquired title to said land by deed from the comptroller of the state of New York, Nelson K. Hopkins, bearing date April 17, 1874.

(9) That the land thus acquired by Baker Woodruff, and by him sold and conveyed to the plaintiff, Aaron Lloyd, is described in said conveyances as follows: "Totten and Crossfield's purchase, township forty-one (41), all thereof in the county of Herkimer, being twenty-two hundred and fifty (2,250) acres, more or less,"—which deed was recorded April 11, 1884.

(10) That the tax sale which resulted in the deed to Baker Woodruff in 1874 was held in the year 1871, and was for the nonpayment of the special road taxes authorized by chapter 347, Laws 1853, for the years 1861, 1863, and 1864. That act, for the purposes of the improvements contemplated, assessed (among other lands) all of townships 4, 5, 6, 7, and 41, Totten and Crossfield's purchase.

(11) That the fact that a small part of township 41 was in Herkimer county did not exempt that part from assessment, and it was actually assessed by the road commissioners nine days after the passage of that act, and continued to be assessed every year thereafter, down to and including the year 1865.

(12) That the assessment roll for the year 1864 was signed by only one commissioner; that the other had resigned his appointment, leaving only one to act; that this act of signing the assessment roll for the year 1864 by only one commissioner was valid.

(13) That the signing of the assessment roll for the year 1864 by only one commissioner, L. R. Lyon, was validated by section 2, c. 434, Laws 1865; that "1854" in said section should be read "1864," the latter being the only year in which the assessment roll was not signed by two commissioners; that the assessment roll for the year 1854 was signed, "F. Segur, L. R. Lyon, Commissioners," etc.

(14) That the various conveyances procured by the defendant the Nehasane Park Association, and put in evidence in this case, were of titles which were superseded by the tax sale of the year 1871, and the comptroller's deed issued thereon to Baker Woodruff in 1874, so far as they relate to and cover "Totten and Crossfield's purchase, township 41, all thereof in Herkimer county, being 2,250 acres, more or less," and are extinguished, as to that tract, by the title thereto now held by the plaintiff from the said Baker Woodruff and wife.

I find as a—

### Conclusion of Law.

That the plaintiff is entitled to the judgment of this court permanently restraining the defendants, and each of them, from interfering with the natural outflow of the waters of Big Moose Lake, by a dam or otherwise, and from consenting to, or permitting, any such interference, and for the costs of this action against the defendants. Judgment is directed to be entered in accordance with the foregoing conclusion of law.

Dated July 17, 1899.　　　　　　　　　　Truman K. Fuller, Referee.

The following is the opinion of the referee:

It appeared upon the trial that Lemon Thomson, one of the firm, had died pending the action; whereupon it was ordered that the pleadings be amended

in that regard, and, deeming them to be so amended, the trial proceeded against the remaining members as survivors.

This action is brought to procure an injunction permanently restraining the defendants, the one from doing, and the other from permitting, any interference with the natural outflow of the waters of Big Moose Lake, upon the ground that such interference would work irreparable injury to the lands of the plaintiff, and for such damages as he may have sustained by reason thereof. No damages were proved. The defendants answer separately,—the firm admitting that, when the complaint was served, they were engaged in building a dam at the outlet of Big Moose Lake, in township 8, with the permission of the other defendant; and alleging that all that part of township 41, Totten and Crossfield's purchase, which is wet by the waters of Big Moose Lake, lies in Hamilton county, and belongs to the Nehasane Park Association; or, in other words, that the plaintiff owns no land which would be touched by their interference with the waters of Big Moose Lake.

The proposition is self-evident that if the plaintiff owns no land which surrounds Big Moose Lake and would be affected by the proposed interference with its waters, and has no possession of any which would be thus affected, he is not entitled to the injunction prayed for; and the converse of this proposition is equally true,—if he does own such land, or has such possession, he is entitled to the restraining order and judgment of this court; for I must hold, upon what appears to me to be the overwhelming weight of evidence in the case, on this branch of it, that the proposed interference with the outflow of the waters of Big Moose Lake does and would injure the lands surrounding it at its easterly end, and surrounding the bays and inlets of said lake in that quarter. I regard this fact as amply proved, and scarcely contradicted.

It was incumbent on the plaintiff, therefore, in the first instance, to establish his ownership by unassailable muniments of title. There is no question of possession that intervenes. To do this, the plaintiff offers in evidence a comptroller's deed to Baker Woodruff, dated April 17, 1874, purporting to convey "Totten and Crossfield's purchase, township 41, all thereof in the county of Herkimer, being 2,250 acres, more or less," and follows this by a deed from Baker Woodruff and wife to himself, dated December 25, 1883, purporting to convey the same premises. For years it has been considered by the comptroller's office, and by parties interested, that there were at least 2,250 acres (more or less) of the Totten and Crossfield purchase, township 41, located in the county of Herkimer, and I find such to be the fact. I find this fact, however, upon disputed evidence. And this leads me to remark that, from the evidence in this case, it is manifestly the duty of the state to complete the survey begun by Superintendent Colvin (the appropriation for which became exhausted before said survey was completed) to establish and locate upon the land the boundary line between the counties of Herkimer and Hamilton, in order that citizens who are dealing in land in said counties near the supposed boundary line may know exactly where said boundary line is. Contrary to what I find to be the fact, some of the witnesses (surveyors) locate said boundary line in such place as to carry the entire tract known as "Totten and Crossfield's Purchase," township 41, into, and make it a part of, the county of Hamilton, thus annihilating the title of the plaintiff, whose description reads, "township 41, Totten and Crossfield's purchase, all thereof in the county of Herkimer," and also the title of his grantor, Woodruff. That the boundary line between the counties of Herkimer and Hamilton runs in such a manner as to accomplish this result is too improbable to be believed, especially in the light of the long course of action of the comptroller's office in reference thereto, and from the records, maps, and surveys on file in the various state offices for the guidance of the land department of the state. After the most untiring research of counsel, made evident upon this trial, the plaintiff is forced to allege in his complaint, and the defendants admit in their answers, that the boundary line between those two counties has never been legally located; thus rendering all descriptions of land bordering thereon indefinite and uncertain, to the confusion of buyers, sellers, and even the owners thereof. Thus, again, is furnished a criticism, if not an animadversion, upon that department of the state government whose duty it is to establish and locate the

boundary lines of counties, so that the citizens of the state may take due notice thereof and govern themselves accordingly.

I come now to the examination of plaintiff's title, founded, as it is, upon the Baker Woodruff deed. This deed bears date December 25, 1883. In turn, Woodruff's title is based upon a comptroller's deed bearing date April 17, 1874. The sale which ultimated in this latter deed took place in 1871. The unpaid taxes which formed the basis of this sale seem to have been those which were assessed by the commissioners appointed by chapter 347, Laws 1853, entitled "An act to construct certain roads, from the settlements in Lewis county to Brown's tract in Herkimer county." This act appointed Lyman R. Lyon and Francis Segur as commissioners, and transferred to them the powers theretofore conferred upon the commissioners of highways of this state by the act of April 24, 1835, over the lands specified in section 2 of said act. That section gives the lands over which the jurisdiction of the commissioners is extended. It is deemed best to notice with particularity how those lands are described: (1) "All that part of Brantingham tract, in the county of Lewis, lying east of the west line of lots numbers 12, 30, 48, 66, 84, 102, 120, 138, 156, 174, 192, 210, 228, 246, 266, 283, 300, 316, 332, and 347." (2) "Also all of Brown's tract, consisting of eight townships, numbers 1 to 8, inclusive, lying in the counties of Lewis, Herkimer, and Hamilton, excepting the subdivision lots in towns 3 and 4." It is seen, therefore, that, when the legislature intended to make an exception of lands, they employed appropriate language to do it. (3) "Also all of townships 1, 2, 3, and 4, Moose river tract, in the counties of Herkimer and Hamilton." (4) "Also all of townships 4, 5, 6, 7, and 41, of Totten and Crossfield's purchase, in the county of Hamilton." This is a mistake. They are not all located in the county of Hamilton. The first four are located entirely in that county, and by far the larger portion of the fifth; but there is a small triangular portion of lot 41 located in Herkimer county. Did the legislature know that, or did not they think of it? Or did they intend to except from the jurisdiction of the commissioners that triangle of 2,250 acres? I do not think they did. If they had, they would have said so. They knew how, as the act shows. Those words, "in the county of Hamilton," are about 19-20ths true and 1-20th error, in locating those townships of the Totten and Crossfield purchase; but that slight error does not imply an exemption from the jurisdiction of the commissioners. It has never been so regarded by them, nor by the comptrollers of the state. Exhibits before me show that this very triangle, lying in Herkimer county, 2,250 acres of the Totten and Crossfield purchase, township 41, was assessed by the commissioners nine days only after the passage of the act appointing them (to wit, June 8, 1853), their first assessment bearing date June 17, 1853, and was continuously assessed by them every year thereafter, down to and including the year 1865, and the taxes paid during all those years, excepting three, without any question ever having been raised, so far as I see from the evidence before me, that such tax was illegally assessed for want of jurisdiction in the commissioners.

Again, no reason appears why this triangle should be exempted. On the contrary, ample reason appears why it should not be,—why it was not, and was not intended to be, exempt. It lies in the midst of the improvements sought to be made by the building of the roads provided for by the act. On the east, south, and west it is surrounded by lands set apart for this improvement, and at least two townships of Brown's tract extend much further north than the triangle. There are no subdivision lots in it, that have been called to my attention, which require local highway improvements as a basis for such exemption; and I am forced to find, not only from the language of the statute, but from all the surroundings of the case, in this part of it, that the said triangle was not exempted, but was legally assessed by the commissioners. The tax sale of 1871 was for the nonpayment of these special road taxes for the years 1861, 1863, and 1864. Nothing beyond what has been above considered, relating to the wording of the statute, has appeared in criticism of the sale of 1871, and the deed in 1874 based upon it, except that in the year 1864 the assessment roll was signed only by one commissioner, the other having resigned. This defect, if it is one, is not jurisdictional, but goes only to the regularity of the proceeding. This was cured by chap-

ter 434 of the Laws of 1865, the next year. Section 2 of said act says: "In case of the resignation, death, disability or refusal to serve of either of said commissioners, any assessment roll, report or receipt for moneys received under said act (1853–1859) made by one commissioner shall be as valid and legal as if signed by both commissioners; and the assessment roll made and signed by one of the commissioners for the year 1854, is hereby declared to be valid and legal the same as if signed by both commissioners." "1854" should read "1864"; for the records show that every assessment roll from 1853 to 1865, inclusive, was signed by two commissioners, except in the single year 1864. This was an evident blunder of the legislature or the copyist; but the curative properties of the act must be applied to the year which needed curing, if any, and not to the one wherein the assessment roll was signed all right by both commissioners. The records show that the assessment roll for the year 1854 was signed by both commissioners, showing an evident error in the curative statute as to the year.

These views lead to the conclusion that the tax sale of 1871, resulting in the comptroller's deed of 1874 to Baker Woodruff, was legal and valid, and conferred upon Mr. Woodruff a good title in fee, to be defeated only by some subsequent, and not by any antecedent, claim; and the conveyance by Baker Woodruff and wife to Aaron Lloyd of the same premises received by him from the comptroller, to wit, "Totten and Crossfield's purchase, township 41, all thereof in the county of Herkimer, being 2,250 acres, more or loss," in 1883, vests in Aaron Lloyd the same title, subject only to similar defeat. I hold that the title of the plaintiff to the lands in question rests wholly upon the Baker Woodruff deed, conveying to him the "Totten & Crossfield purchase, T. 41, all thereof in Herkimer Co., being 2,250 acres, more or less." This, I hold, is a good title to-day, and is not impaired by any previously existing titles; for they were all wiped out by the sale of 1871 to Woodruff, whose title was duly conveyed to the plaintiff in 1883. I have reached the foregoing conclusions only after a very careful review of the evidence given before me on the trial of this case, after a careful examination of the numerous exhibits furnished me by both sides, and after a patient study of the somewhat voluminous briefs of counsel, both old and new, with an examination of many of the authorities cited. As a result of these conclusions, I find that the plaintiff, Aaron Lloyd, is the owner of "Totten and Crossfield's purchase, township 41, all thereof in Herkimer county, being 2,250 acres, more or less," and is entitled to a judgment permanently restraining the defendants, their officers. agents, servants, and employés, from interfering with the outflow of the waters of Big Moose Lake, by dam or otherwise, and from permitting any such interference, together with the costs and disbursements of this action.

Theodore F. C. Demarest, for plaintiff.
Charles E. Snyder, for defendants.

PER CURIAM. Judgment ordered on report of referee restraining defendants and for recovery of damages.

---

### In re LYMAN.[1]

(Supreme Court, Special Term, New York County. January 19, 1898.)

NOTICE OF MOTION—ORDER TO SHOW CAUSE—AFFIDAVIT—EXIGENCY.

A motion brought on for hearing on an order to show cause, based on an affidavit which does not show an exigency to exist requiring the shortening of the usual eight-day notice, will be dismissed where it is returnable in less than eight days, under Code Civ. Proc. § 780, which provides that notice of motion shall be served at least eight days before the hearing, unless the court, on an affidavit showing grounds therefor, makes an

---

[1] Affirmed in 29 App. Div. 390, 52 N. Y. Supp. 1145.